UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X

UNITED STATES OF AMERICA,

       v.

DEVONE JEFFERYS,

          *Defendant*.

--------------------------------X

**MEMORANDUM & ORDER**

18-CR-359(KAM)

**MATSUMOTO, United States District Judge:**

On July 17, 2018, a grand jury returned a three-count indictment against Devone Jefferys (the "defendant"), charging him with (1) conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), (2) attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951(a), and (3) possessing and brandishing a firearm during a crime of violence, specifically, the crime charged in Count Two, in violation of 18 U.S.C. § 924(c) (the "Indictment"). Presently before the court are the parties' pre-trial motions. For the reasons set forth below, the court denies the defendant's motions and grants in part and denies in part the government's motions.

**Background**

The Indictment alleges that on July 31, 2015, the defendant and his co-conspirators conspired and attempted to steal heroin and United States currency from one or more individuals engaged in narcotics trafficking in Brooklyn, New

York.  (ECF No. 1, Indictment, at 1-2.)  The Indictment further alleges that the defendant and his co-conspirators possessed and brandished a firearm during and in relation to the conspiracy and attempted robbery.  (*Id.* at 2.)

On July 17, 2018, a grand jury sitting in the Eastern District of New York returned a three-count indictment against the defendant.  (*See generally id.*)  Count One charges the defendant with conspiracy to commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a).[1]  (*Id.* ¶ 1.)  Count Two charges the defendant with attempted Hobbs Act robbery, also in violation of 18 U.S.C. § 1951(a).  (*Id.* ¶ 2.)  Count Three charges the defendant with possessing and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A),[2] with Count Two serving as the predicate "crime of violence" supporting this charge.  (*Id.* ¶ 3.)

On July 19, 2019, following the defendant's arrest, Magistrate Judge Steven M. Gold arraigned the defendant on the

---

[1] "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both."  18 U.S.C. § 1951(a).

[2] "[A]ny person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime [be subject to additional statutory penalties]."  18 U.S.C. § 924(c)(1)(A).

Indictment.  (ECF No. 5, Minute Entry for Criminal Proceeding.)

The defendant entered a plea of not guilty on all counts and was

remanded to custody at the Metropolitan Detention Center (the

"MDC") in Brooklyn, New York.  (*Id.*)

On August 13, 2019, the defendant appeared before the

court and requested a trial date.  (ECF Minute Entry, Aug. 13,

2019.)  The court scheduled trial for October 11, 2019, and

entered a pretrial scheduling order setting forth the timeline

for submission of all pre-motions.  (ECF No. 11, Scheduling

Order.)  The instant motions followed.

## Discussion

The defendant filed two pre-trial motions.  *First*, the

defendant moves to strike what he claims is surplusage –

specifically, the alias "Moneybags" – from the face of the

Indictment.  *Second*, the defendant moves to dismiss Count Three

of the Indictment on the grounds that Count Two's charge of

attempted Hobbs Act robbery, in contrast to substantive Hobbs

Act robbery, is not a crime of violence within the meaning of §

924(c) and, therefore, cannot serve as the predicate for Count

Three's charge of possessing or brandishing a firearm during a

crime of violence.

The government filed three motions *in limine*.  *First*,

the government moves to admit evidence of the defendant's

alleged sexual assault of a victim during the crimes charged in

the Indictment.  *Second*, the government moves to admit evidence

of the defendant's flight after the charged offenses, as proof

of the defendant's consciousness of guilt.  *Finally*, the

government moves to preclude the defendant from cross-examining

certain government witnesses on topics not related to either

their credibility or the crimes charged.

For the reasons set forth below, the court denies the

defendant's motion to strike and motion to dismiss and the

government's motion to admit evidence of the alleged sexual

assault.  The court grants the government's motion to admit

evidence of the defendant's flight and to preclude the defendant

from conducting irrelevant cross-examination.

## I.    The Defendant's Motions

### A. Motion to Strike Surplusage from the Indictment

The defendant moves the court to strike the alias

"Moneybags" from the face of the Indictment.  (ECF No. 14,

Def.'s Pretrial Motions ("Def.'s Mots."), Ex. 1, Aff. in Supp.,

at 1-2.)  The defendant does not cite any evidence or present

any authority supporting his argument that his alias should be

stricken.  (*See id.*)  Rather, the defendant conclusorily alleges

that if the alias remains in the Indictment, he will be

"irreparably harmed by the jury being shown an alias which may

be or may not be a correct or similar alias of [the] defendant

and which may or may not correspond to the evidence ultimately

introduced." (*Id.*) The government opposes the defendant's motion to strike on the grounds that the alias is relevant to the defendant's identification and that trial evidence, including witness testimony, will provide a sufficient nexus between the defendant and the alias "Moneybags."

Rule 7(d) of the Federal Rules of Criminal Procedure allows a court to "strike surplusage from the indictment" upon a defendant's motion. Fed. R. Crim. P. 7(d). But the district court should not grant a motion to strike surplusage unless "the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." *United States v. Mulder*, 273 F.3d 91, 99 (2d Cir. 2001) (quoting *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990)); *see also, e.g.*, *United States v. Thompson*, 141 F. Supp. 3d 188, 201 (E.D.N.Y. 2015), *aff'd*, 896 F.3d 155 (2d Cir. 2018). "[E]ven language deemed prejudicial should not be stricken if evidence of the allegation is admissible and relevant to the charge." *United States v. Rivera*, No. 09-CR-619, 2010 WL 1438787, at *5 (E.D.N.Y. Apr. 7, 2010) (citing *Scarpa*, 913 F.2d at 1013). "'Given this exacting standard, . . . motions [to strike surplusage from an indictment] are rarely granted.'" *Id.* (quoting *United States v. Coffey*, 361 F. Supp. 2d 102, 123 (E.D.N.Y. 2005)).

Courts in the Second Circuit routinely deny motions to strike aliases which are relevant to the crimes charged and not

inflammatory or prejudicial.  *See, e.g.*, *United States v. Thompson*, 141 F. Supp. 3d 188, 201 (E.D.N.Y. 2015), *aff'd*, 896 F.3d 155 (2d Cir. 2018) (denying motion to strike alias where it was "'necessary to understand evidence' such as Facebook posts in which [the defendant] describe[d] illicit activities while referring to it"); *United States v. Ahmed*, 94 F. Supp. 3d 394, 436 (E.D.N.Y. 2015) (denying motion to strike aliases where the government asserted that several witnesses would testify against the defendant but only knew him by his aliases); *United States v. Barrett*, 824 F. Supp. 2d 419, 450 (2011) (denying motion to strike where the government contended that use of the aliases was necessary to identify the defendant at trial and because the defendant's aliases were not inflammatory or prejudicial); *United States v. Peterson*, 168 F. Supp. 2d 51, 56 (E.D.N.Y. 2001) (denying motion to strike alias where the alias would constitute part of the government's proof at trial as witnesses would identify the defendant by the alias); *United States v. Rucker*, 32 F. Supp. 2d 545, 560-61 (E.D.N.Y. 1999) (denying motion to strike alias where the government represented it would offer proof of alias at trial and because some witnesses claimed to know the defendant only by the alias).

The court's prior ruling in *United States v. Barrett*, 824 F. Supp. 2d 419 (2011), is instructive.  In *Barrett*, the defendant moved to strike his aliases ("Derrick Brown," "Sean

Brown," "Mouthy," "The General" and "Solo") from the indictment. *Id.* at 449. The defendant argued that these aliases were inflammatory and prejudicial, and that including them in the indictment would deprive him of a fair trial. *Id.* The government countered that the defendant's aliases were necessary to identify him at trial, because many of the defendant's co-conspirators and witnesses for the government knew him only by his nicknames. *Id.*

The court denied the defendant's motion. In light of the government's representations that the aliases would comprise part of its evidence at trial, including that several witnesses knew the defendant by his aliases, the court found the aliases relevant and admissible. *See, e.g.*, *Rucker*, 32 F. Supp. 2d at 560-61 ("Reference to a defendant by his name and alias is permissible if the government intends to offer evidence of that alias as being necessary to identify the defendant in connection with the crimes charged."); *Peterson*, 168 F. Supp. 2d at 56. The court also rejected the defendant's argument that the aliases were inflammatory or prejudicial – they were far more innocuous than inflammatory nicknames like "Frankie the Beast" and Carmine "The Snake," which a trial court deemed prejudicial

in *United States v. Persico*, 621 F. Supp. 842, 860 (S.D.N.Y. 1985).[3]

The court finds that the defendant's motion must be denied on substantially similar grounds. As an initial matter, the government has represented that it will proffer proof of the defendant's use of this alias. "[A]t least one witness will testify that the witness knew the defendant by the nickname 'Moneybags.'" (ECF No. 18, Gov't's Opp. to Def.'s Pretrial Mots. ("Gov't's Opp."), at 4.) The government also plans to introduce evidence from social media platforms employing the username "Moneybags," or variations of it, which feature photographs of the defendant. (*See id.*) In light of the relevance of identification evidence, and the nexus between the defendant's alias and other evidence, including at least one witness's testimony, the court deems the alias relevant to the crimes charged. Moreover, the court finds that the alias is not inflammatory or prejudicial, and the defendant has proffered no contrary explanation or argument. There is, therefore, no basis to grant the defendant's motion to strike.

---

[3] The court notes, however, that even a prejudicial nickname should not be excluded where it is otherwise relevant. *See Rucker*, 32 F. Supp. 2d at 560 (noting that the prejudicial nature of an alias is "not fatal if [the alias] will be admissible as part of the government's proof at trial"); *Persico*, 621 F. Supp. at 861 ("Even if prejudicial, however, aliases and nicknames are proper in an indictment where they will be part of the government's proof at trial.").

The court recognizes that it could "reserve decision on this issue until after the government has had an opportunity to demonstrate the relevance of the alias[]." *Ahmed*, 94 F. Supp. at 436; *see also, e.g.*, *United States v. Ahmed*, No. 10-CR-131(PKC), 2011 WL 5041456, at *3 (S.D.N.Y. Oct. 21, 2011) ("This Court will follow the practice adopted by others of awaiting the government's evidence before ruling on the motion [to strike surplusage].").  Nonetheless, given the absence of any argument that casts down on either the relevance or the innocuous nature of the alias, the court will deny the defendant's motion without prejudice.  If the defendant later comes to believe that the government has failed to proffer a sufficient nexus between the alias "Moneybags" and the defendant, he may renew his motion to strike the alias from the Indictment at that time.  *See, e.g.*, *Barret*, 824 F. Supp. 2d at 450 (allowing renewal of motion to strike after the close of the government's case); *Peterson*, 168 F. Supp. 2d at 56 (same); *Persico*, 621 F. Supp. at 861 (same).

B. <u>Motion to Dismiss Count Three of the Indictment</u>

The defendant also moves to dismiss Count Three of the Indictment.  (Def.'s Mots., Ex. 2, Mem. of Law in Supp. ("Def.'s Mem."), at 2-4.)  Count Three charges the defendant with possessing and brandishing a firearm during a crime of violence, as charged in Count Two, in violation of § 924(c).  (*Id.*)  The defendant argues that attempted Hobbs Act robbery, the predicate

crime of violence relied on by the government to sustain the §

924(c) charge, does not qualify as a crime of violence for

purposes of the aforementioned statute.  Without this predicate,

the defendant argues, he cannot legally be charged with

violating § 924(c), and Count Three must therefore be dismissed.

The court respectfully disagrees.

Title 18 U.S.C. § 924(c)(1)(A) provides that "any

person who, during and in relation to any *crime of violence* or

drug trafficking crime . . . , uses or carries a firearm, or

who, in furtherance of any such crime, possesses a firearm,

shall, in addition to the punishment provided for such crime of

violence or drug trafficking crime," be subject to additional

penalties.  18 U.S.C. § 924(c)(1)(A).  The statute defines a

"crime of violence" as:

> An offense that is a felony and (A) has as an element the
> use, attempted use, or threatened use of physical force
> against the person or property of another, or (B) that by
> its nature involves a substantial risk that physical force
> against the person or property of another may be used in
> the course of committing the offense.

*Id.* § 924(c)(3).  The court must, therefore, determine whether

attempted Hobbs Act robbery meets the requirements of either §

924(c)(3)(A), referred to as the "elements clause," or §

924(c)(3)(B), referred to as the "residual clause."[4]  Before

---

[4] In *United States v. Hill*, 890 F.3d 51, 54 (2d Cir. 2018), the Second Circuit
stated that it "refer[s] to § 924(c)(3)(A) as the 'force clause' and §
924(c)(3)(B) as the 'risk-of-force clause.'"  In *United States v. Davis*, 139
S. Ct. 2319 (2019), however, the United States Supreme court referred to §

10

addressing whether attempted Hobbs Act robbery qualifies under either clause, it is important to review the United States Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). This decision forms the foundation of the defendant's argument that attempted Hobbs Act robbery should not qualify as a crime of violence.

In *Davis*, Maurice Davis and Andre Glover were charged with conspiracy to commit Hobbs Act robbery and Hobbs Act robbery. *Id.* at 2324. At trial, the government also argued that the defendants had "each committed two separate § 924(c) violations by brandishing a short-barreled shotgun in connection with their crimes." *Id.* One § 924(c) violation was predicated on the defendants' conviction for substantive Hobbs Act robbery, which qualified as a crime of violence under the elements clause. *See id.* at 2325. The other § 924(c) violation was predicated on the defendants' conviction for *conspiracy* to commit Hobbs Act robbery, which qualified as a crime of violence only under the residual clause. *See id.* The jury ultimately found the defendants guilty on both counts, which meant that each defendant faced a mandatory minimum sentence of 35 years. *Id.* at 2324-25.

---

924(c)(3)(A) as the "elements clause" and to § 924(c)(3)(B) as the "residual clause." The court employs the language used by the Court in *Davis*.

The defendants appealed their convictions, arguing, *inter alia*, that the § 924(c) count based on *conspiracy* to commit Hobbs Act robbery should be vacated. *Id.* at 2325. Specifically, the defendants argued that the residual clause was unconstitutionally vague, and therefore, any offense which only qualified as a crime of violence under that clause – i.e., the conspiracy to commit Hobbs Act robbery – could not sustain a § 924(c) conviction. *Id.* at 2325. The Fifth Circuit ultimately agreed with this argument and found § 924(c)'s residual clause unconstitutionally vague.

The United States Supreme Court granted *certiorari* to address the specific question of whether § 924(c)'s residual clause was void for vagueness. The Supreme Court answered this question in the affirmative. Thus, a crime would only qualify as a crime of violence for purposes of § 924(c) if it met that statute's elements test. The Supreme Court then remanded the case for further proceedings, *i.e.*, to determine whether any of the petitioner's convictions qualified as crimes of violence under § 924(c)'s elements clause. But the Supreme Court did *not* specifically hold that *all* inchoate crimes, including attempts, cannot qualify as crimes of violence. Rather, *Davis* invalidated the residual clause, making it such that an offense can only qualify as a crime of violence for purposes of § 924(c) by meeting the requirements of the elements clause.

The critical question before this court is consequently whether *attempted* Hobbs Act robbery qualifies as a crime of violence under § 924(c)'s elements clause. "To determine whether an offense is a crime of violence [under the elements clause], courts employ what has come to be known as the 'categorical approach.'" *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018) (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)); *see also United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006) (per curiam) (applying the categorical approach to determine whether a predicate crime was a "crime of violence" under § 924(c)). The categorial approach is "'not only consistent with both precedent and sound policy' but[] also . . . 'necessary in view of the language of the applicable statutes.'" *Id.* (quoting *Vargas–Sarmiento v. U.S. Dep't of Justice*, 448 F.3d 159, 167 (2d Cir. 2006) (internal quotation marks omitted)).

"Under the categorical approach, courts identify 'the minimum criminal conduct necessary for conviction under a particular statute.'" *Id.* (quoting *Acosta*, 470 F.3d at 135). "In doing so, courts 'look only to the statutory definitions' — *i.e.*, the elements — of [the] . . . offense[], and *not* 'to the particular [underlying] facts.'" *Id.* (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013) (alterations and emphasis in original)). It is not appropriate for the reviewing

court to "'go behind the offense as it was charged to reach [its] own determination as to whether the underlying facts' qualify the offense as, in [each] case, a crime of violence." *Id.* at 55-56 (quoting *Ming Lam Sui v. INS*, 250 F.3d 105, 117–18 (2d Cir. 2001)). Rather, "the categorical approach requires [the reviewing court] to consider the minimum conduct necessary for a conviction of the predicate offense . . . and then to consider whether such conduct amounts to a crime of violence under § 924(c)(3)(A)." *Id.* at 56.

The court's analysis regarding whether attempted Hobbs Act robbery is a crime of violence begins with the language of the Hobbs Act, which provides as follows:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, **by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property** in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a) (emphasis added). Although the Second Circuit has not yet so held, it appears that the Hobbs Act is a divisible statute. *See, e.g.*, *United States v. Walker*, 314 F. Supp. 3d 400, 409 (E.D.N.Y. 2018) ("The Hobbs Act is a divisible statute. A defendant may be convicted of Hobbs Act Robbery or Hobbs Act extortion.") (Weinstein, J.); *see also Hill*, 890 F.3d at 55 n.6 (recognizing this dispute but declining to reach the

divisibility of the Hobbs Act in this case).  The court thus

looks to the language of the Hobbs Act defining "robbery", which

provides in relevant part as follows:

> [T]he unlawful taking or obtaining of personal property
> from the person or in the presence of another, against his
> will, **_by means of actual or threatened force, or violence,
> or fear of injury, immediate or future, to his person or
> property_**, or property in his custody or possession, or the
> person or property of a relative or member of his family or
> of anyone in his company at the time of the taking or
> obtaining.

18 U.S.C. § 1951(b)(1) (emphasis added).[5]  These elements make

clear that "[a] conviction for [substantive] Hobbs Act robbery

by definition requires 'actual or threatened force, or violence,

or fear of injury, immediate or future, to . . . _person or

property_." _United States v. St. Hubert_, 909 F.3d 335, 348 (11th

Cir. 2018) (emphasis in original).  These elements are similar

to the elements clause in § 924(c), which defines a "crime of

violence" involving firearms offenses as having as an element

"the 'use, attempted use, or threatened use of physical force

against _person or property_.'"  _Id._ (quoting 18 U.S.C. §

924(c)(3)(A) (emphasis in original)).

---

[5] The court notes, however, that analyzing just these elements rather than the broader elements of the Hobbs Act would not substantively change the court's analysis.  The Second Circuit in _Hill_ concluded that, applying the standard categorical approach to the entire offense as defined in the statute, it qualified as a crime of violence.  890 F.3d at 55 n.6.  As the discussion below shows, if a violation of the Hobbs Act as set forth in _Hill_ qualifies as a crime of violence, an attempt to violate the Hobbs Act also qualifies.

In light of this overlap, the Second Circuit has squarely held that substantive Hobbs Act robbery qualifies as a crime of violence under § 924(c)'s elements clause. *See Hill*, 890 F.3d at 60 ("Hobbs Act robbery 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" (quoting 18 U.S.C. § 924(c)(3)(A))). But the Second Circuit, following *Davis*, has also held that *conspiracy* to commit Hobbs Act robbery does not qualify under the elements clause. *See United States v. Barrett*, 937 F.3d 126, 129 (2d Cir. 2019). This leaves open the question of whether *attempted* Hobbs Act robbery qualifies as a crime of violence for purposes of § 924(c)'s elements clause.

The defendant argues that the United States Supreme Court's reasoning in *Davis* suggests that attempted Hobbs Act robbery, as an inchoate crime akin to conspiracy, similarly should not satisfy the requirements of the elements clause. (Def.'s Mem.) The defendant argues that a conviction for attempt requires proof that a defendant (a) had the intent to commit the object crime and (b) engaged in conduct amounting to a substantial step towards its commission. (*Id.* (citing *United States v. Farhane*, 634 F.3d 127, 145 (2d Cir. 2011)). And the defendant further asserts that all that is required to show a "substantial step" is demonstrating that a defendant "engaged in

more than 'mere preparation.'" (*Id.* (citing *United States v. Celaj*, 649 F.3d 162, 171 (2d Cir. 2011)).

The defendant's brief unfortunately does not provide a persuasive analysis of why the foregoing notions mandate a finding that Hobbs Act robbery does not qualify as a crime of violence. Nor does the defendant actually apply the categorical approach, or *Davis*, to provide a jurisprudential foundation for his argument. Instead, the defendant conclusorily asserts without explication that "it is *possible* to be guilty of an attempt to commit a Hobbs Act [r]obbery without using, threatening to use, or attempting to use force or violence," and that Second Circuit and other case law [including *Davis*] indicates that once the appropriate fact pattern is considered[,] an attempted Hobbs Act [r]obbery will no longer be considered a crime of violence for purposes of § 924(c)." (*Id.*) Such bare-bones analysis has been rejected by the Second Circuit as insufficient to demonstrate that an offense does not constitute a crime of violence, *Hill*, 890 F.3d at 56 (determining whether a charged crime constitutes a crime of violence "requires more than the application of legal imagination to [the] . . . statute's language"), but the court will nonetheless address the defendant's argument.

As noted above, the Second Circuit has yet to determine whether attempted Hobbs Act robbery qualifies as a

crime of violence under § 924(c)'s elements clause. *But see United States v. McCoy*, No. 17-3515 (raising on appeal whether attempted Hobbs Act robbery constitutes a crime of violence under § 924(c)'s elements clause). Nor has any district court in the Second Circuit ruled on this specific question, as of the date of this Memorandum and Order. *See, e.g.*, *United States v. Rucker*, No. 15-CR-6079 (FPG), 2017 WL 9730255, at *6 (W.D.N.Y. Nov. 20, 2017) ("Whether attempted Hobbs Act robbery qualifies as a crime of violence appears to be a case of first impression in this circuit post-*Johnson II*.").

The Second Circuit has, however, indicated that where a substantive offense is a crime of violence under § 924(c), an attempt to commit that offense similarly qualifies under the elements clause. *See, e.g.*, *United States v. Scott*, 681 F. App'x 89, 95 (2d Cir. 2017) ("Attempted murder in the second degree is a crime unmistakably involving 'an attempted use . . . of physical force' within § 924(c)(3)(A)." (ellipses in original)); *see also, e.g.*, *Leyones v. United States*, No. 10-CR-743(ARR), 2018 WL 1033245, at *4 (E.D.N.Y. Feb. 22, 2018) (rejecting a substantially similar argument from a defendant and finding that attempted bank robbery under 18 U.S.C. § 2113 constitutes a crime of violence under the elements clause); *United States v. Walker*, 442 F.3d 787, 788 (2d Cir. 2006) (holding that attempted New York assault is a "violent felony"

under the Armed Career Criminal Act).  This is in line with
precedent around the country.  *See, e.g.*, *Hill v. United States*,
877 F.3d 717, 718-19 (7th Cir. 2017) ("When a substantive
offense would be a violent felony under § 924(e) and similar
statutes, an attempt to commit that offense also is a violent
felony."), *cert. denied*, 139 S. Ct. 352 (Oct. 9, 2018); *Arellano
Hernandez v. Lynch*, 831 F.3d 1127, 1132 (9th Cir. 2016) ("We
have generally found attempts to commit crimes of violence,
enumerated or not, to be themselves crimes of violence."
(internal quotation marks omitted)).

Moreover, those courts which have considered the
question presently before the court have concluded that
attempted Hobbs Act robbery qualifies as a crime of violence
under § 924(c)'s elements clause.  The most thorough analysis of
this question is set forth in *United States v. St. Hubert*.  909
F.3d 335.  There, the Eleventh Circuit concluded that attempted
Hobbs Act robbery qualifies under the elements clause for the
following reasons:

> A completed Hobbs Act robbery itself qualifies as a crime
> of violence under § 924(c)(3)(A) and, therefore, attempt to
> commit Hobbs Act robbery requires that [the defendant]
> intended to commit *every element* of Hobbs Act robbery,
> including the taking of property in a forcible manner.
> [T]he definition of a crime of violence in § 924(c)(3)(A)
> equates the use of force with attempted force, and thus the
> text of § 924(c)(3)(A) makes clear that actual force need
> not be used for a crime to qualify under § 924(c)(3)(A).
> Thus, . . . given § 924(c)'s 'statutory specification that
> an element of attempted force operates the same as an

element of completed force, and the rule that conviction of attempt requires proof of intent to commit all elements of the completed crime,' attempted Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A) as well.

909 F.3d at 352 (emphasis added); *see also, e.g.*, *United States v. Chann*, No. 99-CR-433(WBS)(AC), 2019 WL 3767649, at *5 (E.D. Cal. Aug. 9, 2019) ("Attempted Hobbs Act robbery is also widely recognized as a crime of violence under the [elements] clause."); *United States v. Brown*, No. 11-CR-63(HEH), 2019 WL 3451306, at *2 (E.D. Va. July 30, 2019) (concluding that attempted Hobbs Act robbery satisfies the elements clause); *United States v. Edwards*, No. 03-CR-204, 2019 WL 3347173, at *2 (E.D. Va. July 25, 2019) ("[A]ttempted Hobbs Act robbery constitutes a crime of violence under the elements clause.").

In line with the foregoing authority, this court concludes that attempted Hobbs Act robbery constitutes a crime of violence under § 924(c)'s elements clause. As attempted Hobbs Act robbery qualifies under the elements clause, it may sustain a § 924(c) charge. Accordingly, the defendant's motion to dismiss Count Three of the Indictment is denied.

## II. The Government's Motions *in limine*

The court next turns to the government's pre-trial motions, all of which seek preliminary rulings on the admissibility of certain evidence. The purpose of a motion *in limine* is to "aid the trial process by enabling the court to

rule in advance of trial on the relevance of certain forecasted evidence." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). In doing so, the trial court should only exclude evidence when it is "clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 192, 193 (S.D.N.Y. 2001); *see also, e.g.*, *United States v. Ceballo*, No. 13-CR-308 KAM, 2014 WL 4980554, at *1 (E.D.N.Y. Oct. 6, 2014); *Barret*, 2011 WL 6704862, at *4.

In reviewing motions *in limine*, the court bears in mind that the Federal Rules of Evidence establish a general rule of admissibility. *See* Fed. R. Evid. 401. If evidence is "relevant," it is admissible "unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court." Fed. R. Evid. 402. Evidence is relevant where "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence, on the other hand, is not admissible. Fed. R. Evid. 402.

The government's motions *in limine* seek preliminary rulings (1) admitting evidence of the defendant's alleged sexual assault of a victim during the crimes charged, (2) admitting evidence of the defendant's flight from law enforcement, and (3)

precluding the defendant from cross-examining certain government witnesses on topics unrelated to their credibility or the crimes charged. The court denies the government's motion to admit evidence of the defendant's alleged sexual assault of a victim during the crimes charged, but grants the government's motion to admit evidence of the defendant's flight and to preclude irrelevant cross-examination of certain government witnesses.

A. Motion to Admit Evidence of Sexual Assault

The government moves to admit evidence that the defendant sexually assaulted a victim during the commission of the crimes charged in the Indictment. The government argues this evidence is admissible both (1) as direct evidence of the crimes charged and (2) as evidence so intertwined with the story of the crime on trial that it must be admitted to avoid leaving a conceptual hole in the story for the jury. The defendant objects to the admissibility of evidence regarding the alleged sexual assault and argues that, even if it is admissible, it should be excluded pursuant to Rule 403 of the Federal Rules of Evidence as it is substantially more prejudicial than probative. The court concludes that the evidence is relevant and admissible but still finds that it should be precluded under Rule 403 because its probative value is substantially outweighed by a danger of unfair prejudice and confusing or misleading the jury.

With respect to admissibility, the court finds that
evidence of the defendant's alleged sexual assault constitutes
direct evidence of the offenses charged.  The defendant, after
brandishing a firearm and restraining the victims, allegedly
removed a victim from the apartment while still in possession of
the firearm, and while the robbery was still occurring, to
assist him in locating narcotics which were thrown out of the
victims' apartment window in the course of the robbery.  Once
outside the apartment, and after observing that the drugs he
sought were behind a locked gate, the defendant sexually
assaulted the victim at gunpoint, first by forcing oral sex, and
then raping the victim.  These brutal acts of physical violence
represented an exercise of force with a firearm in order to
control the victim, ensure that she would comply with the
defendant's efforts to locate the narcotics, and not resist his
attempted robbery of narcotics.  By removing the victim at
gunpoint from the victims' apartment to search for the
narcotics, the defendant also encouraged compliance from all
other victims with the defendant's objective to effect the
robbery of narcotics and currency.  It is therefore beyond
question that the sexual assault at gunpoint constitutes direct
evidence of both the "force" or "violence" element necessary for
a conviction under 18 U.S.C. § 1951(a), and the possessing or

using a firearm element required for a conviction under 18
U.S.C. § 924(c).

The court also finds that this uncharged conduct is
not "other crimes" evidence and is therefore not subject to the
restrictions of Rule 404(b) of the Federal Rules of Evidence.[6]
Uncharged conduct is not "other crimes" evidence for purposes of
Rule 404(b) if it "arose out of the same transaction or series
of transactions as the charged offense, if it is inextricably
intertwined with the evidence regarding the charged offense, or
if it is necessary to complete the story of the crime on trial."
*United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)
(quoting *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir.
1997)); *see also, e.g.*, *United States v. Khan*, 591 F. Supp. 2d
202, 205 (E.D.N.Y. 2008). All of foregoing factors are met
here. This conduct arose out of the same transaction or series
of transactions; was directed at a victim of the ongoing
attempted robbery; occurred at a point where the defendant

---

[6] Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is
not admissible to prove the character of a person in order to show action in
conformity therewith." Fed. R. Evid. 404(b). But "[i]t may, however, be
admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident."
*Id.* The Second Circuit "follow[s] an inclusionary rule, allowing the
admission of such evidence for any purpose other than to show a defendant's
criminal propensity, as long as the evidence is relevant and satisfies the
probative-prejudice balancing test of Rule 403 of the Federal Rules of
Evidence." *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994). "The
district court has wide discretion in making this determination, and [the
Circuit] will reverse only for abuse of discretion." *United States v.
Carboni*, 204 F.3d 39, 44 (2d Cir. 2000).

sought the victim's assistance in locating the narcotics that were the object of the ongoing attempted robbery; and is part of the story of the crime to be tried.  Evidence of this conduct would therefore also be admissible even if it did not serve the purpose of "directly establish[ing] an element of a charged crime."  *United States v. Tarantino*, No. 08-CR-655 JS, 2011 WL 1113504, at *2 (E.D.N.Y. Mar. 23, 2011) ("To be admissible on this ground, the evidence need not directly establish an element of a charged crime as long as it provides background for the events charged in the Indictment." (citing *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991)).

The defendant nevertheless argues that this evidence should not be admissible because, in his view, the crimes charged concluded *before* the sexual assault occurred.  But this is belied by the evidence the government seeks to present at trial.  The fact that some portion of the charged offenses concluded before the sexual assault does not mean that the charged offenses were concluded in their entirety.  To the contrary, the sexual assault by the defendant is alleged to have occurred against a victim of the robbery, who was removed from the apartment and taken downstairs and held at gunpoint for the express purpose of locating the drugs sought in the robbery.  Moreover, the defendant's conduct after the alleged sexual assault – moving back into the apartment building even after

sexually assaulting the victim – establishes that the attempted robbery was continuing and that the defendant had not abandoned his intent to continue engaging in the commission of the attempted robbery.

Nonetheless, "[a]lthough evidence may be relevant as directly probative of or inextricably intertwined with the defendant's charged conduct, this evidence may nonetheless be inadmissible pursuant to [Rule 403] if 'its probative value is substantially outweighed by a danger of . . . unfair prejudice.'" *United States v. Rivera*, No. 13-CR-149(KAM), 2015 WL 1875658, at *3 (E.D.N.Y. Apr. 22, 2015) (citing Fed. R. Evid. 403; *United States v. Bourne*, No. 08-CR-888, 2011 WL 4458846(NGG), at *12 (E.D.N.Y. Sept. 23, 2011) ("Evidence of uncharged acts may be admissible, subject to limitations imposed by Rule[] 403 . . . .")). "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). In determining whether evidence is unfairly prejudicial, the court considers it in the context of the crime alleged, excluding evidence which is "more inflammatory than the charged crime." *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999); *cf. United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992)

(finding no unfair prejudice where "evidence of prior narcotics transactions 'did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged.'" (quoting *United States v. Roldan–Zapata*, 916 F.2d 795, 804 (2d Cir. 1990))).

The court is guided in its analysis by prior Second Circuit decisions regarding the admissibility of evidence of sexual assault in similar contexts. In *United States v. Colombo*, 869 F.2d 149 (2d Cir. 1989), the Second Circuit reversed a conspiracy conviction where the district court admitted "background" evidence that the defendant's co-conspirators, but not the defendant, had raped and sodomized a woman in the course of a robbery, despite the fact that the defendant was not present during the sexual assault and did not know that it would occur.

The Second Circuit distinguished *Colombo* in *United States v. Robinson*, 702 F.3d 22 (2d Cir. 2012). In *Robinson*, the defendant attempted to rely on *Colombo* to challenge the admission of evidence that he threatened to kill a woman in a prosecution for sex trafficking. *Id.* at 38. The Second Circuit rejected the defendant's argument, noting that in *Robinson*, in contrast to *Colombo*, the defendant's "threats were not simply gratuitous evidence of violence offered to show the 'background'

of the charged offense.  Instead, the evidence of these threats related to material factual disputes at trial."  *Id.*

In *United States v. Delva*, 858 F.3d 135 (2d Cir. 2017), the Second Circuit affirmed a district court's decision to admit evidence of sexual assault committed in connection with a kidnapping and robbery.  The district court denied the defendant's motion *in limine* to exclude this evidence, "noting that Delva was charged not only with the substantive offenses of kidnapping and robbery but also with conspiring to commit those offenses; the court concluded that the rape evidence was relevant and, given the circumstances of the crimes, was not unfairly prejudicial."  *Id.* at 156.  (citing *United States v. Delva*, No. 12-CR-802, 2014 WL 4460360, at *6-*7 (S.D.N.Y. Sept. 10, 2014)).  The victim testified that "for about a day, she managed to resist the intruders' orders to summon [another victim] to her apartment and that she gave in only after three of them, in close succession, raped her."  *Id.*  The court found that the victim's testimony was therefore directly relevant to the manner in which the robbery succeeded, even though the defendant was not personally involved in the sexual assault. *See id.*

In this case, the court finds that the probative value of the evidence of sexual assault is relatively less than in the foregoing cases and is substantially outweighed by a danger of

unfair prejudice.  There is no question that the defendant is

charged with violent and serious offenses.  He is alleged to

have brandished a firearm, invaded the home of the narcotics

trafficking victim, restrained the victim and another person

with duct tape, forced the other family members at gunpoint to

lie on the floor, and sought to take their property.  But the

alleged forced oral sex and rape of one of the victims, who

happened to be in her family's apartment where she lived during

the attempted robbery, is a particularly brutal crime that the

court finds to be far more inflammatory and serious than the

crimes charged.  There is a real risk that the jury may be lured

into declaring the defendant guilty of the charged offenses due

to the violent and disturbing nature of the alleged rape and the

forced oral sex of a victim.  *See, e.g.*, *United States v. Kadir*,

718 F.3d 115, 122 (2d Cir. 2013) (noting that evidence is

"unduly prejudicial [where] it tends to have some adverse effect

upon [the] defendant beyond tending to prove the fact or issue

that justified its admission").  Moreover, this evidence would

present a risk of jury confusion in deciding whether the

defendant is guilty of the charged offenses against the backdrop

of an uncharged, disturbing sexual assault.  The sexual assault

evidence, though probative of the use of force and brandishing

of a firearm, is not a necessary element to prove the charged

offenses given that the government represents that it may prove

its case through other evidence, including the testimony of witnesses. The sexual assault evidence may also be omitted without leaving a significant conceptual void in the story, as the only events occurring after the sexual assault were the victim's flight, the defendant's return to the lobby of the apartment building, and the defendant's subsequent flight. Given the weight of the other evidence demonstrating the use of force and brandishing of a firearm, the points for which the sexual assault evidence would be probative, and given the highly inflammatory and troubling nature of the rape, the court therefore finds that preclusion of evidence of the alleged sexual assault is warranted.

This is by no means to say that evidence of sexual assault is always inadmissible under Rule 403, or even that in most cases it would be inadmissible. As the Second Circuit's precedent shows, there are many instances where such evidence holds relatively more probative value than it does here, warranting its admission.[7] The victim of this brutal sexual

---

[7] Decisions from outside this circuit have also admitted sexual assault evidence which occurred as part of robberies where that evidence held relatively more probative value. *See, e.g.*, *United States v. Davis*, 683 F. App'x 480 (6th Cir. 2017) (evidence of sexual assault committed during robbery not more prejudicial than probative where evidence was compelling proof that victim correctly identified defendant and defendant's identity was the central issue in the case, and also because it filled what otherwise would have been a sizeable hole in the prosecution's story of the case); *United States v. Birtha*, 384 F. App'x 351 (2010) (evidence of sexual assault committed during home invasion not more prejudicial than probative where it completed the story of the crime and was inextricably intertwined with it, and also cut against the defense that "there was little physical evidence

assault may still testify as to other events occurring both

before and after the alleged assault both in the apartment

building and in the back alley.  The government may elicit

testimony regarding, *inter alia*, the circumstances of the

victim's removal from the apartment by the defendant, arrival at

the locked gate, that the gate was locked, that the defendant

left the victim unattended, and that the victim subsequently

escaped.  The court's ruling is intended only to ensure that the

defendant is convicted for the crimes with which he is charged,

of which there appears to be a substantial amount of evidence,

rather than for his sexual assault of one of the victims.

B. <u>Motion to Admit Flight as Evidence of the Defendant's
   Consciousness of Guilt</u>

The government next moves to admit evidence of the

defendant's evasion of law enforcement authorities as evidence

of his consciousness of guilt.  (ECF No. 16, Gov't's Mots. *in

limine* ("Gov't Mots."), at 10-14.)  The government seeks to

admit (1) witness testimony concerning the circumstances prior

to and following the defendant's arrest and (2) the defendant's

post-arrest recorded telephone calls at the MDC.  (*Id.* at 10.)

The defendant concedes that evidence of flight is admissible

---

linking [the defendant] to the home invasions, that the robbery victims were
unable to identify him, and that the testimony of cooperating co-conspirators
was not credible"); *United States v. Rivera*, 83 F.3d 542 (1st Cir. 1996)
(evidence of sexual assault committed during kidnapping not more prejudicial
than probative where it provided the sole direct evidence of use of a
firearm, which was at issue).

where there is a sufficient nexus between a defendant's flight and consciousness of guilt for the crimes charged, but he argues no such nexus exists in this case.  (ECF No. 17, Def.'s Opp. to Gov't's Mots. *in limine* ("Def.'s Opp."), at 6-10.) Specifically, the defendant argues that although there may be evidence of flight at the time of his arrest, there is no evidence tying the defendant's flight to his consciousness of guilt of the crimes charged rather than, say, a general desire not to speak with police officers.  (*Id.* at 9 ("There is *no* evidence that Jefferys jumped out of the window because of the crime[s] charged in this indictment.).)  Rather the opposite is true.  The indictment was sealed, the robbery had occurred four years earlier and there is no indication that anyone was made aware that the indictment regarding the 2015 robbery even existed.")  The court disagrees with the defendant's arguments and grants the government's motion to admit evidence of flight.

"It is well-settled that flight can, in some circumstances, evidence consciousness of guilt."  *United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005) (citing *United States v. Glenn*, 312 F.3d 58, 67 (2d Cir. 2002); *United States v. Salameh*, 152 F.3d 88, 157 (2d Cir. 1998) (per curiam)).  But "before a court may instruct a jury regarding flight, a satisfactory factual predicate must exist from which the jury can infer consciousness of guilt from flight."  *Id.* (citing

*United States v. Amuso*, 21 F.3d 1251, 1258 (2d Cir. 1994), 21
F.3d at 1260; *United States v. Sanchez*, 790 F.2d 245, 252 (2d
Cir. 1986)).  This requirement "ensures that the evidence is
probative in a legal sense and protects the defendant against
the possibility of the jury drawing unsupported inferences from
otherwise innocuous behavior."  *Amuso*, 21 F.3d at 1260.

"The government may introduce evidence of flight to
demonstrate consciousness of guilt if a series of inferences can
be drawn 'from which the jury can infer consciousness of guilt
from flight.'"  *United States v. Diallo*, 461 F. App'x 27, 30 (2d
Cir. 2012) (quoting *Al-Sadawi*, 432 F.3d at 424).  In this
regard, the district court must consider "the degree of
confidence with which four inferences can be drawn: (1) from the
defendant's behavior to flight; (2) from flight to consciousness
of guilt; (3) from consciousness of guilt to consciousness of
guilt concerning the crime charged; and (4) from consciousness
of guilt concerning the crime charged to actual guilt of the
crime charged."  *Al-Sadawi*, 432 F.3d at 424.  Each link in the
chain must be "sturdily supported."  *Id.*  The government has met
its burden of establishing all four inferences.

*First*, the government intends to present evidence
establishing that the defendant's conduct constitutes flight
from law enforcement.  (Gov't's Mots. at 11-12.)  It represents
that the defendant has stated on "multiple occasions" that he

was "on the run forever," and that he jumped out of a window on the day of his arrest to avoid capture. (*Id.*) The defendant appears to concede that the evidence establishes the inference that he was fleeing from law enforcement, noting that "[j]umping out the window when the police knocked might be considered evidence of flight." (Def.'s Opp. at 9.)

*Second*, the government intends to present evidence connecting this apparent flight to the defendant's consciousness of guilt. (Gov't's Mots. at 12.) The government represents that it will present evidence, including the defendant's calls while at MDC after his arraignment, which suggest that the defendant had been fleeing law enforcement for approximately a year. (*Id.*) For example, as the defendant stated in a call at MDC on August 3, 2019, "I feel better. I'm not running no more. I feel better . . . . Now I'm addressing something that I've been . . . running from for a while." (*Id.* at 5.) The defendant also appears to concede that this evidence is sufficient to establish the inference that his flight was related to consciousness of guilt, noting that "[u]nder certain circumstances[,] jumping out the window might occur because of a consciousness of guilt." (Def.'s Opp. at 9.)

*Third*, the government intends to present evidence linking the defendant's consciousness of guilt to his consciousness of guilt concerning the crimes charged. (Gov't's

Mots. at 12.)  The government has represented that "[i]n his post-arrest interview with law enforcement authorities, the defendant stated that he believed [that one of his alleged co-conspirators] had implicated him in the crimes charged and that he had been 'on the run for a year' . . . the same time period during which law enforcement authorities had been seeking to arrest him for the crimes charged in this case."  (*Id.*)  The government also asserts that the defendant's statements in his MDC calls, notably that he is "addressing something that [he has] been . . . running from for awhile," evidence the requisite nexus to establish his consciousness of guilt of the charged offenses.  (*Id.*)  The government also noted in its reply that it has identified a new witness who will testify that "the defendant's flight from law enforcement authorities was connected to his awareness that law enforcement authorities were seeking to arrest him in connection with the instant case." (ECF No. 19, Gov't's Rep. in Supp. of Mots. *in limine*, at 5.)

  *Finally*, the government intends to present evidence of a nexus between the defendant's consciousness of guilt for the crimes charged and his actual guilt.  (Gov't's Mots. at 13.) The government argues that "[t]he defendant, as a participant in the crimes charged, clearly has personal knowledge of his guilt or innocence, and his state of mind is clearly relevant."  (*Id.*) Although not many cases address this specific inference, it

appears to be met by virtue of the inherent relationship between consciousness of guilt and actual guilt. *See, e.g.*, *United States v. Anderson*, 575 F. Supp. 31, 33 (S.D.N.Y. 1983) ("The statements do, however, meet the relevancy test of Fed. R. Evid. 401 since they support the inference of consciousness of guilt which in turn supports an inference of actual guilt." (citing *United States v. Buigues*, 568 F.2d 269, 273 (2d Cir. 1978))).

The defendant nevertheless argues that, at the time of his arrest, "[t]here [was] *no* evidence that [he] jumped out of the window because of the crime charged in this indictment. Rather the opposite is true. The indictment was sealed, the robbery had occurred four years earlier and there is no indication that anyone was made aware that the indictment regarding the 2015 robbery even existed." (Def.'s Opp. at 9 (emphasis in original).) The Second Circuit has noted that "[e]vidence that a defendant fled immediately after a crime was committed supports an inference that the flight was motivated by a consciousness of guilt of that crime," and that "[a]s the time between the commission of the offense and the flight grows longer, the inference grows weaker." *Al-Sadawi*, 432 F.3d at 425 (quoting *United States v. Silverman*, 861 F.2d 571, 582 n. 4 (9th Cir. 1988)). In this case, however, the government intends to call a witness who will testify that the defendant sought to

evade capture for a robbery, the crime charged in the
Indictment, rendering this argument less persuasive.

Moreover, "[t]he fact that a defendant's flight is
subject to varying interpretations does not lead inevitably to
the conclusion that the district court abused its discretion in
admitting flight evidence." *Steele*, 390 F. App'x 6, 12 (2d Cir.
2010). Rather, "[w]here the evidence passes the threshold
inquiry of relevance, '[t]he accepted technique is for the judge
to receive the evidence and permit the defendant to bring in
evidence in denial or explanation.'" *Amuso*, 21 F.3d at 1258
(quoting *United States v. Ayala*, 307 F.2d 574, 576 (2d Cir.
1962)).

The court will, consequently, grant the government's
motion *in limine* seeking to admit evidence of the defendant's
flight and permit the defendant to present evidence denying or
explaining his own decision to flee. The court has also
considered whether to grant a limiting instruction. The Second
Circuit has cautioned that "'[f]or good reason, th[e] practice
[of court instructions to the jury on inferences to be drawn
from flight] has fallen into widespread disfavor, absent special
circumstances.'" *Steele*, 390 F. App'x at 12 (quoting *United
States v. Mundy*, 539 F.3d 154, 158 (2d Cir. 2008). The Second
Circuit further stated that "[i]t is not error for the court to
decline to give the charge," and that the district court in that

case "wisely" did not do so. *Mundy*, 539 F.3d at 156. The court is therefore not inclined to grant a limiting instruction regarding evidence of the defendant's flight.

C. Preclude Irrelevant Cross-Examination

The government's last motion *in limine* seeks to preclude the defendant from cross-examining law enforcement officers on "irrelevant subject matters." (Gov't's Mots. at 14-18.) Specifically, the government seeks to preclude the defendant from cross-examining the New York Police Department detectives it may call as witnesses "about the civil lawsuit[s] filed against them" or "their parking violations." (*Id.* at 18.) The defendant does not oppose this motion *in limine*. (Def.'s Opp. at 10 ("Counsel for the defendant does not oppose the government requests to limit inquiry on certain background information of government witnesses.").) The defendant concedes that the information summarized by the government is "irrelevant," and the court agrees. (*Id.*) The court therefore grants the government's motion *in limine* to preclude cross-examination regarding civil lawsuits and parking violations. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."); Fed. R. Evid. 611 ("Cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility."); *United States v. Brown*, No. 07-CR-874 (KAM), 2009 WL 497606, at *2 (E.D.N.Y. Feb.

26, 2009) (explaining in detail a defendant's right to cross-examine witnesses and the restrictions the district court may impose on it); *United States v. Wilkerson*, 361 F.3d 717, 745 (2d Cir. 2004) ("A district court is afforded broad discretion in controlling the extent and scope of cross-examination.").

## Conclusion

For the foregoing reasons, the court (1) DENIES the defendant's motion to strike the reference to "Moneybags" from the indictment as surplusage; (2) DENIES the defendant's motion to dismiss Count Three of the Indictment; (3) DENIES the government's motion *in limine* to admit evidence of the defendant's alleged sexual assault of a victim during the course of the crimes charged; (4) GRANTS the government's motion *in limine* to admit evidence of the defendant's flight from custody; and (5) GRANTS the government's motion *in limine* to preclude the defendant's cross-examination of certain government witnesses on topics not relevant to their credibility or the crimes charged.

**SO ORDERED.**

Dated:     October 9, 2019
           Brooklyn, New York

                                    /s/
                              _____
                              HON. KIYO A. MATSUMOTO
                              UNITED STATES DISTRICT JUDGE