```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,
                                              **MEMORANDUM & ORDER**
          v.
                                              18-cr-359 (KAM)
DEVONE JEFFERYS,

                    *Defendant*.
----------------------------------X
```
**MATSUMOTO, United States District Judge**:

On October 22, 2019, a jury in the Eastern District of New York found Devone Jefferys ("Mr. Jefferys") guilty of (1) conspiracy to commit Hobbs Act robbery, (2) attempted Hobbs Act robbery, and (3) unlawful use or possession of a firearm in connection with a crime of violence (specifically, attempted Hobbs Act robbery) in violation of 18 U.S.C. § 924(c). Mr. Jefferys now moves for a judgment of acquittal on Count Three pursuant to Federal Rule of Criminal Procedure 29(c)(2). For the reasons set forth below, Mr. Jefferys' motion is DENIED.

## Standard of Review

Rule 29(c)(2) of the Federal Rules of Criminal Procedure provides that a district court shall enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. *See* Fed. R. Crim. P. 29. A defendant challenging the sufficiency of the evidence to support his conviction "'bears a heavy burden.'" *United States v. Velasquez*, 271 F.3d 364, 370 (2d Cir. 2001) (quoting *United*

*States v. Finley*, 245 F.3d 199, 202 (2d Cir. 2001)); *see also United States v. Tillem*, 906 F.2d 814, 821 (2d Cir. 1990) (stating that motions to challenge sufficiency of evidence "rarely carry the day").

In determining whether to grant a motion for judgment of acquittal, the district court must view the evidence in the light most favorable to the prosecution. *United States v. Temple*, 447 F.3d 130, 136 (2d Cir. 2006). "All permissible inferences must be drawn in the government's favor." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999). The court must ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Temple*, 447 F.3d at 136 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Put another way, '[a] court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" *Id.* (quoting *Guadagna*, 183 F.3d at 130).

The Second Circuit has "emphasized that courts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003) (citing *Guadagna*, 183 F.3d at 129 ("Rule 29(c) does not provide the trial court with an opportunity to substitute its own determination of . . . the

2

weight of the evidence and the reasonable inferences to be drawn for that of the jury.")). It is the jury's task, not the Court's, to "choose among competing inferences that can be drawn from the evidence." *Id.* (citing *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995)). "These principles apply whether the evidence being reviewed is direct or circumstantial." *United States v. Maldonado-Rivera*, 922 F.2d 934, 978 (2d Cir. 1990); *see also Jackson*, 335 F.3d at 180 ("[Courts must] bear in mind that the jury's verdict may rest entirely on circumstantial evidence."). "[I]f the court concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the court] must let the jury decide the matter." *Guadagna*, 183 F.3d at 129.

## **Discussion**

Mr. Jefferys challenges the sufficiency of the evidence regarding his conviction for unlawful use or possession of a firearm in violation of 18 U.S.C. § 924(c). Mr. Jefferys claims that the evidence at trial did not show beyond a reasonable doubt (1) that he knowingly and intentionally possessed a firearm or (2) that the weapon he possessed satisfied the legal definition of a firearm, as set forth in 18 U.S.C. § 921(a)(3).[1] The Court finds that there was sufficient

---

[1] Mr. Jefferys' submission primarily challenges the sufficiency of the evidence presented by the Government as to whether the gun he possessed met the legal definition of a firearm. (*See generally* ECF No. 33, Motion for

3

evidence for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt and, consequently, will deny Mr. Jefferys' motion for acquittal.

I. **Evidence that Mr. Jefferys Possessed a Firearm**

Mr. Jefferys briefly argues that the Government failed to present sufficient evidence that he knowingly and intentionally possessed a firearm as charged in Count Three. But the evidence presented at trial was sufficient for a reasonable jury to conclude that Mr. Jefferys used or carried a firearm during and in relation to the attempted Hobbs Act robbery, or that he possessed a firearm in furtherance of the attempted Hobbs Act robbery. *See* 18 U.S.C. § 924(c)(1)(A).

At trial, four witnesses – including Mr. Jefferys' co-conspirator, Ronell Peterkin – testified that Mr. Jefferys possessed a weapon during the attempted Hobbs Act robbery:

- Ronell Peterkin testified that he personally handed Mr. Jefferys a firearm just before the pair entered the victims' apartment. (Trial Transcript ("Tr."), at 509:4-10.) Mr. Peterkin also testified that, once inside the apartment, Mr. Jefferys held several victims at gunpoint in the living room. (*Id.* at 511:3-6.)

- Jaime Arriaga testified that during the robbery, the "thin" robber (i.e., Mr. Jefferys) "had a gun" and "was

---

Judgment of Acquittal, at 2.) But Mr. Jefferys also states in his submission that "[t]he evidence at trial did not show beyond a reasonable doubt that Devone Jeffreys knowingly and intentionally possessed a firearm as charged in Count Three . . . *nor did the government prove that what was possessed satisfied the legal definition of a firearm.*" (*Id.* at 1 (emphasis added).) The Court will thus address the sufficiency of the evidence both as to whether Mr. Jefferys possessed a gun and as to whether the item possessed by Mr. Jefferys qualified as a firearm.

4

> threatening and pointing it" at the victims. (*Id.* at 369:10-22.)

- <u>Sheila Tavera</u> testified that the "skinny" robber "aim[ed] a gun at" two victims (*id.* at 242:18-243:7) and, on more than one occasion, held the gun in her direction (*see, e.g.*, *id.* at 271:5-18).

- <u>Haydee Cordero</u> stated in her 911 call regarding the attempted Hobbs Act robbery that the robbers "ha[d] [the victims] [at] gunpoint" and were in the apartment "with guns." (Gov't Ex. 21.)

There was, consequently, a sufficient factual predicate from which a reasonable jury could have inferred that Mr. Jefferys possessed a firearm during the attempted Hobbs Act robbery.

Mr. Jefferys argues that this evidence is insufficient because the Government failed to introduce the firearm itself into evidence. (ECF No. 33, Motion for Judgment of Acquittal ("Def. Br."), at 2.) But the Government is not required to do so, and may instead rely on eyewitness testimony, as it did here. *See United States v. Curanovic*, 490 F. App'x 403 (2d Cir. 2013) ("In cases where a gun is not recovered, the government may be able to make out its case that a gun was used based on eyewitness testimony."). Mr. Jefferys further argues that the evidence is insufficient because no weapon was fired during the course of the robbery. (Def. Br. at 2.) However, discharging a weapon is not an element of the statute and instead serves only as an enhancement providing for a heightened mandatory minimum custodial sentence. *Compare* 18 U.S.C. § 924(c)(1)(A)(i)

(providing for liability for unlawful use or possession of a firearm in connection with a crime of violence) *with* 18 U.S.C. § 924(c)(1)(A)(iii) (providing an enhancement where that firearm is discharged during the crime of violence).

Mr. Jefferys then turns to what are essentially challenges to the jury's findings of fact.  He argues that none of the videos presented at trial showed him in possession of any weapon.  (Def. Br. at 2.)  The Government and Mr. Jefferys appear to dispute whether the videos depicted Mr. Jefferys in possession of a firearm, but that is a matter appropriately left to the jury.  The same applies to Mr. Jefferys' argument that Ms. Tavera was plainly "lying" in her testimony because the video, he says, contradicted her testimony that Mr. Jefferys brought her downstairs at gunpoint.  The videos, on which Mr. Jefferys and Ms. Tavera were depicted, partially captured the two as they descended from the apartment, down several floors to the basement area.  What the videos depicted, and whether they depicted the events as either the Government or Mr. Jefferys characterized them, was a matter of dispute at the trial and it fell within the province of the jury as the trier of fact.  And even if Mr. Jefferys were, in some objective sense, correct as to what the videos did or did not depict, and irrespective of whether *he* believed Ms. Tavera's testimony, there was sufficient evidence in the record for a reasonable jury to have concluded

beyond a reasonable doubt that Mr. Jefferys knowingly and intentionally possessed a firearm as charged in Count Three.[2]

## II. Evidence that the Firearm Possessed by Mr. Jefferys Satisfied the Statutory Requirements

Mr. Jefferys principally challenges the sufficiency of the Government's evidence that the item the jury found him in possession of during the attempted Hobbs Act robbery satisfied the legal definition of a firearm. (*See generally* Def. Br.) The definition of a firearm applicable to § 924(c) is derived from 18 U.S.C. § 921(a)(3), which defines a firearm as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device." 18 U.S.C. § 921(a)(3) (defining firearm "[a]s used in [Chapter 44]," which includes 18 U.S.C. § 924). The evidence presented was sufficient to permit a reasonable jury to infer that what Mr. Jefferys possessed met this definition.

---

[2] Mr. Jefferys' attorney recognizes that "[s]everal witnesses testified that they observed the co-conspirator [Mr.] Peterkin *and Mr. Jefferys* in possession of what appeared to be guns." (Def. Br. at 2 (emphasis added).) While Mr. Jefferys attacks the credibility of Ms. Tavera, stating that "it was shown that [Ms.] Tavera was lying when she testified that the defendant was pointing a gun at her when they exited the apartment," the Court reiterates that it was for the jury to decide whether it found Mr. Tavera's testimony – in whole or in part – to be credible. *Jackson*, 335 F.3d at 180 (noting that it is the jury's role to "choose among competing inferences that can be drawn from the evidence").

It bears repeating that several witnesses testified to Mr. Jefferys' possession of what they believed to be a "gun" during the course of the attempted Hobbs Act robbery. (*See, e.g.*, Tr. at 242:18-243:7 (Tavera), 369:10-22 (Arriaga); Gov't Ex. 21 (Cordero).) Mr. Peterkin's testimony was particularly noteworthy. Mr. Peterkin described his familiarity with firearms, stating that he had possessed "about a hundred" firearms over the course of his lifetime. (Tr. at 471:02-07.) Turning to the night of the robbery, Mr. Peterkin explained that he and Mr. Jefferys traveled to an apartment building where another individual retrieved a firearm and placed it in a tool bag. (*Id.* at 497:14-498:02.) Mr. Peterkin recognized the firearm as a "nine-millimeter" (*id.* at 497:21-22) and handled the weapon and believed it to be loaded (*id.* at 497:23-498:02; *see also id.* at 498:13-15 ("Q: So at this point a roll of duct tape and a *nine-millimeter gun* were in the tool bag? A. Yes." (emphasis added))). Mr. Peterkin then testified that, upon arriving at the victims' apartment building, he opened the tool bag and handed the loaded "nine-millimeter" to Mr. Jefferys. (*Id.* at 509:04-10.) The pair then proceeded into the victims' apartment, where Mr. Peterkin said Mr. Jefferys held several of the victims at gunpoint. (*Id.* at 511:03-06.)

Despite this wealth of evidence, Mr. Jefferys claims that the Government failed to present sufficient evidence

because, again, there was no firearm introduced into evidence, no weapon was fired, no video (in his view) portrayed him holding a firearm, and none of the victims who testified to having observed the robbers with firearms had expertise in identifying whether the firearm he possessed was a "toy, a prop[,] or a real gun." (Def. Br. at 2.) In challenging Mr. Peterkin's testimony, Mr. Jefferys argues that "there was no evidence that [Mr.] Peterkin had any expertise at identifying guns[,] nor did he testify that the gun that he displayed was designed to or may be readily converted to expel a projectile by the action of an explosive." (*Id.*) The Court finds Mr. Jefferys' arguments unpersuasive and contrary to the weight of the Second Circuit's precedent.

In *United States v. Jones*, 16 F.3d 487 (2d Cir. 1994), the Second Circuit rejected an argument that "[b]ecause none of the eyewitnesses [at a defendant's trial] knew anything about firearms, . . . their descriptions were insufficient to establish that the weapon was a real gun, rather than a toy or other replica." The panel explained that "[e]ven though a gun is not recovered, eyewitness testimony may be sufficient for the government to meet its burden of proof under § 921(a)(3), so long as it provides a rational basis for the jury to find that the object observed by eyewitnesses 'was, in fact, a firearm.'" *Id.* at 490 (citing *United States v. Castillo*, 924 F.2d 1227,

9

1230 (2d Cir. 1991)). "No specific type of testimony is required." *Id.* at 490-91 (citing *Parker v. United States*, 801 F.2d 1382, 1384 (D.C. Cir. 1986) (eyewitness testimony need not come from firearms expert to sustain § 924(c) charge)).

Several recent panels have affirmed *Jones*' continued validity. *See, e.g.*, *United States v. Brown*, 784 F. App'x 1, 4 (2d Cir. 2019) ("Brown contends that the Rite-Aid manager's testimony that the robber brandished a 'black gun' was insufficient to establish that the robber possessed a real firearm. . . . [T]he mere possibility that a firearm observed by a witness could be a sophisticated toy or other facsimile does not necessarily create a reasonable doubt, nor is the government required to disprove that theoretical possibility. Rather, it is for the jury to weigh the evidence and determine whether the government met its burden of demonstrating that Brown possessed a firearm." (internal quotation marks and citations omitted)); *Curanovic*, 490 F. App'x at 405 ("In cases where a gun is not recovered, the government may be able to make out its case that a gun was used based on eyewitness testimony."); *United States v. Steele*, 390 F. App'x 6, 10-11 (2d Cir. 2010) ("Ballard asserts that the evidence before the jury, testimony that the victims claimed the robbers had 'guns,' is insufficient as far as proving that the robbers had 'firearms,' as so defined by Title 18. The facts in the instant case are on

10

all fours with our precedent, and we therefore reject Ballard's contention as to the sufficiency of the evidence." (internal quotation marks and citations omitted)).

The Court agrees with the Government that this case is on all fours with the Second Circuit's precedent. The evidence presented by the Government provided a rational basis for the jury to find beyond a reasonable doubt that the object Mr. Jefferys possessed "was, in fact, a firearm." *Jones*, 16 F.3d at 489. Three of the victims testified that Mr. Jefferys possessed a "gun" during the course of the robbery. One victim, Ms. Tavera, indicated that she heard a "click" from the weapon possessed by Mr. Jefferys (Tr. at 249:07-14), an additional fact from which the jury could have inferred the weapon was real. Finally, Mr. Jefferys' co-conspirator, Mr. Peterkin, testified to his familiarity with guns, to the specific type of gun possessed by Mr. Jefferys (a nine-millimeter handgun), and to the fact that Mr. Peterkin physically held the firearm and believed it to be loaded before it was in the possession of Mr. Jefferys. Given this evidence, Mr. Jefferys' argument that no rational juror could have concluded that he possessed a firearm, as defined in § 921(a)(3), is unavailing.[3]

---

[3] Mr. Jefferys also argues that the jury's finding that he possessed a weapon must have been a "compromise verdict" because "[e]vidence showed that something was pointed at the victims," but the jury did not find that Mr. Jefferys had brandished the weapon. (Def. Br. at 2.) It is possible that the jury believed the evidence suggesting that Mr. Jefferys *possessed* a gun

11

**Conclusion**

For the foregoing reasons, the Court denies Mr. Jefferys' motion for a judgment of acquittal. Sentencing of Mr. Jefferys will take place on May 6, 2020 at 11:00 a.m.

**SO ORDERED.**

Dated:   January 10, 2020
         Brooklyn, New York

/s/
Hon. Kiyo A. Matsumoto
United States District Judge

---

but did not unanimously credit the evidence showing that he *brandished* a gun. As Mr. Jefferys' own memorandum of law suggests, the jury may have had reason to discredit at least portions of Ms. Tavera's testimony because the video presented arguably contradicted her claim that Mr. Jefferys walked her downstairs at gunpoint. Moreover, during deliberations, the jury made several requests for evidence relating to Mr. Jefferys' possession and/or brandishing of a weapon. *See, e.g.*, Court Exhibits 4 (footage of Mr. Jefferys walking victim downstairs); 8 (footage of Mr. Jefferys entering the building); 13 (footage of Mr. Jefferys entering victims' apartment); 14 (testimony of Mr. Peterkin); 16 (footage of Mr. Jefferys entering victims' apartment).) In any event, it was for the jury, not the Court, to decide which portions of each witness's testimony to believe and what inferences to draw from the evidence presented at trial, and there was sufficient evidence from which the jury could have inferred that Mr. Jefferys possessed a firearm during the attempted Hobbs Act robbery.